UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――X

**C.T.** individually, and on behalf of her child, **S.T.**, a minor,

Plaintiffs,

-against-

**Northport-East Northport Union Free School District**

Defendant.
―――――――――――――――――――――――――――――X

Case No. 25-cv-1125

**COMPLAINT FOR ADMINISTRATIVE REVIEW OF ERRONEOUS DECISIONS BY THE IMPARTIAL HEARING OFFICER AND STATE REVIEW OFFICER**

Individuals with Disabilities Education Act; N.Y. Educ. Law §4401 *et seq*.

C.T. (Parent), individually and on behalf of her minor child, S.T., alleges the following violations of their educational rights by Northport-East Northport Union Free School District (Defendant or District):

## I.   PARTIES

1. S.T. is a 16-year-old child with a disability as defined by Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1400, *et seq*.

2. C.T. is S.T.'s mother. They have resided at all relevant times within the geographical area served by the District.

3. The District is the Local Educational Agency (LEA) responsible for providing S.T. a FAPE under the IDEA and New York's education laws and administrative code.

4. The District's administrative offices are located at 1075 Fifth Avenue, East Northport, NY 11731.

## II. JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action under the IDEA, 20 U.S.C. § 1400, *et seq.*, and 28 U.S.C. § 1331, which confers jurisdiction in cases arising under the Constitution and laws of the United States.

6. The Court has supplemental jurisdiction to adjudicate New York state law claims arising out of the same facts as in the asserted federal claims. 28 U.S.C. § 1367.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(l) as the District has its principal offices in this judicial district.

8. Plaintiffs have exhausted their administrative remedies for all claims that require exhaustion.

## III. FACTUAL BACKGROUND[1]

9. S.T. has a complex psychoeducational profile. He is diagnosed with, among other things, Autism Spectrum Disorder (ASD), without accompanying intellectual and language impairments, requiring support in social communication. He also engages in restricted, repetitive behaviors often associated with ASD. He is also diagnosed with Russell-Silver Syndrome, a rare condition that affects growth beginning in the prenatal period, and Attention Deficit/Hyperactivity Disorder (ADHD)-combined presentation. He has experienced significant trauma.

10. S.T. is a kind and loving young man of at least average intellectual potential who enjoys sports, Taekwondo and video games.

11. Despite the District lowering its academic standards to help push him through from grade to grade, S.T.'s academic and social difficulties only escalated as he began preparing for the transition from middle to high schools.

---

[1] This background is from Parent's Due Process Complaint (DPC), filed with the District on September 12, 2023. The DPC contains a complete recitation of relevant facts.

12. S.T. failed to hand in assignments, struggled to keep up with classwork and homework, and failed to maintain learned skills without significant levels of individual support. He also endured teasing from peers and was even mocked by his science teacher for taking too long on a classroom assignment.

13. For years, the District failed to offer S.T. adequate special education programming to meet his unique needs and address his struggles. His individualized educational programs (IEPs) reflected his academic stagnation and the District's deficient response, often carrying over the same descriptions of his ability and achievement levels from year to year.

14. At the end of the 2021-22 school year, S.T. had not met any of the reading, writing and speech/language goals in his individualized educational program (IEP).

15. On August 30, 2022, Parent gave the District proper legal notice that she intended to place S.T. at Winston Preparatory Academy (Winston Prep) and that she would seek tuition reimbursement from the District.

16. When the District failed to offer an appropriate program in response to Parent's notice, Parent enrolled S.T. at Winton Prep for the 2022-2023 school year.

17. S.T. began to thrive at Winston Prep during the 2022-2023 school year and remains there to present.

18. He receives individualized instruction, in a small school and class setting with peers appropriately matched based on need and performance levels. He has made gains socially, improved his adaptive life skills and hygiene, earned grades in the B and A ranges, and performed well in standardized tests of academic skill. He reports "loving" school.

## IV. LEGAL FRAMEWORK AND STANDARD OF REVIEW

### A. The Individual with Disabilities Education Act (IDEA)

19. This is an action under the IDEA, which offers states federal funding in exchange for their agreement to provide students with disabilities a "free appropriate public education" (FAPE).

20. The Supreme Court has explained:

> FAPE, as the [IDEA] defines it, includes "special education" and "related services." "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability"; "related services" are the support services "required to assist a child . . . to benefit from" that instruction.
>
> A State covered by the IDEA must provide a disabled child with such special education and related services "in conformity with the [child's] individualized education program," or IEP.

*Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 390-91 (2017).

21. The *Endrew F.* court further explained that IEP is the "centerpiece" of the IDEA's "education delivery system for disabled children." *Id*. at 391. The crux of the Court's decision was that an IEP must be tailored to the child's individual circumstances and unique needs, explaining:

> A comprehensive plan prepared by a child's "IEP Team"[2] which includes teachers, school officials, and the child's parents, an IEP must be drafted in compliance with a detailed set of procedures.
>
> These procedures emphasize collaboration among parents and educators and require careful consideration of the child's individual circumstances. The IEP is the means by which special education and related services are "tailored to the unique needs" of a particular child.

*Id*.

22. The Court then explained that an IEP *requires* fulsome, accurate information about the disabled child, and must articulate a detailed plan that, if followed properly, will give the child

---

[2] In New York, the IEP Team is called the Committee on Special Education (CSE).

the best chance at making real and meaningful progress. It emphasized the "individualized" nature of IEPs: "An IEP is not a form document. It is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Id*. at 400.

23. The specific factual context for the Court's decision was that the child, Endrew, was making only "small advances or alterations" in his public school from year to year, not meaningful progress. *Endrew F. v. Douglas Cty. Sch. Dist*., 290 F. Supp. 3d 1175, 1185 (D. Colo. 2018) (district court opinion on remand from Supreme Court). The district court and 10th Circuit had held that Endrew's progress, while minimal, was sufficient to satisfy the Supreme Court's then-existing standard for FAPE under *Board of Education v. Rowley*, 458 U.S. 176 (1982), which merely required a child to make "more than *de minimis*" progress. *Endrew F.,* 580 U.S. at 397-403.

24. Revisiting and rejecting this formulation, *Endrew F*. raised the substantive "floor" for FAPE, establishing the "markedly more demanding" standard that an IEP be "appropriately ambitious in light of [the child's] circumstances." *Id*. at 402.

25. On remand, the district court held that Endrew's IEP did not meet the Supreme Court's revisited substantive floor for FAPE because it –

> failed to create an educational plan that was reasonably calculated to enable Petitioner to make progress, even in light of his unique circumstances. The IEP was not appropriately ambitious because it did not give Petitioner the chance to meet challenging objectives under his particular circumstances. Specifically, the IEP proposed by the District was not reasonably calculated for Petitioner to "achieve academic success, attain self-sufficiency, and contribute to society that are substantially equal to the opportunities afforded children without disabilities."

*Endrew F*., 290 F. Supp. 3d at 1186.

26. *Endrew F*. is a crucial comparison in this case because, as discussed below, S.T. similarly made almost no progress from year to year under the IEPs offered by the District. Moreover, like Endrew's IEPs, S.T.'s IEPs lacked formal behavior plans despite clear indications

5

that he needed them. In language that applies with equal force to this case, the *Endrew F.* district court explained:

> The District's inability to develop a formal plan or properly address Plaintiff's behaviors that had clearly disrupted his access to educational progress starting in his second grade year does, under the new standard articulated by the Supreme Court in this case, impact the assessment of whether the educational program it offered to Petitioner was or was not reasonably calculated to enable him to make progress appropriate in light of his circumstances. The District's inability to properly address Petitioner's behaviors that, in turn, negatively impacted his ability to make progress on his educational and functional goals, also cuts against the reasonableness of the April 2010 IEP.

*Id*. at 1184.

27. The Supreme Court's restatement of the FAPE standard is consistent with Congress's findings in 2004 when it enacted a major revision of the IDEA:

> [T]he implementation of this title has been impeded by ***low expectations***, and an insufficient focus on applying replicable research on ***proven methods of teaching and learning*** for children with disabilities.
>
> Almost 30 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by—
>
> (A) having high expectations for such children and ensuring their access to the general education curriculum in the regular classroom, to the maximum extent possible, in order to—
>
> (i) meet developmental goals and, to the ***maximum extent possible***, the challenging expectations that have been established for all children; and
>
> (ii) be prepared to lead ***productive and independent*** adult lives, to the ***maximum extent possible***;

20 U.S.C. § 1400 (emphases added).

28. When a parent believes their child has not received a FAPE, they have the right to a "Due Process" hearing before an impartial hearing officer (IHO). This is a bench trial for all intents and purposes.

29. Among the many procedural protections in Due Process hearings, Parents and school districts have the right to introduce records and to call and cross-examine witnesses.

30. The *Endrew F.* court emphasized that, by the time of a Due Process hearing, a district should "be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Id*. at 404. This expectation of a "cogent and responsive explanation" is heightened in New York, where school districts have the affirmative burden to prove that they offered a child a FAPE.

31. At the conclusion of a Due Process hearing, an IHO issues a "findings of fact and decision" (FOFD). IHOs and reviewing courts have broad power "in considering equitable factors relevant to fashioning relief." *Gagliardo v. Arlington Cen. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007).

**B. Review of New York SRO decisions: Federal courts only defer to the SRO for certain categories of analysis.**

32. New York has a "two-tiered" Due Process system. After an IHO issues an FOFD, an aggrieved party may seek review before a State Review Officer (SRO) in the New York Office of State Review.

33. The SRO is charged with making an independent decision based on its review of the entire record. The SRO operates like an appellate court in that it seldom admits additional evidence and almost never hears live testimony. Unlike state and federal appellate panels, SROs act individually and do not request oral argument.[3]

---

[3] SROs are authorized to hear oral argument and testimony but in practice do not do so.

34. A party aggrieved by the SRO's decision may then file an original action challenging that decision in state trial court or federal district court.[4]

35. A district court performs an independent judicial review of the SRO's decision and makes its decision based on the preponderance of the evidence. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012).

36. Because the SRO is New York's final state administrative decisionmaker, federal courts owe some deference to its decisions. However, because SROs are appellate officers who, unlike IHOs, review a "cold record" without observing witness testimony, the deference courts owe to them is circumscribed. Courts have explained that deference to the SRO hinges on the *quality* of its opinion, and applies only to specific categories of analysis. A reviewing court's deference to an SRO decision "will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive." *Id*. at 244 (internal citations omitted).

37. Different aspects of an SRO's analysis merit greater and lesser deference from reviewing courts:

- Little deference to the SRO when it interprets objective indications of progress.

- Little deference to the SRO when it challenges the IHO's findings by relying on documents that lack foundation or testimonial corroboration.

- More deference to the SRO when it has greater familiarity with the evidence and witnesses than does the reviewing court.

- More deference to the SRO when it makes decisions about an IEP's educational methodology and substantive adequacy.

- No deference to the SRO when it substitutes its assessments of credibility for those of the IHO.

---

[4] The IDEA gives concurrent jurisdiction to state and federal courts to review IHO and SRO decisions. As a practical matter, parties almost always file such actions in federal court.

- No deference to the SRO when it decides whether a district has complied with the IDEA's procedural requirements.

- No deference to the SRO when it fails to grapple with evidence that contradicts its own findings of fact.[5]

38. During appeals to the SRO, a school district retains the burden to prove that it offered a child FAPE. The SRO may not reverse that burden and require parents to prove that the district's program or placement was inadequate. *B.R. v. N.Y.C. Dep't of Educ.*, 910 F. Supp. 2d 670, 678 (S.D.N.Y. 2012).

39. As discussed below, applying this review framework, the court owes the SRO's decision here little deference. The decision was not "grounded in thorough and logical reasoning," and its grounds for reversing the IHO lay in categories of analysis that do not merit deference.

## V. THE IHO AND SRO REACH CONFLICTING DECISIONS

40. After Parent filed the DPC, the District appointed Vanessa M. Gronbach, Esq. to preside as the IHO.

41. IHO Gronbach presided over six days of witness testimony and issued a detailed and well-reasoned FOFD on July 30, 2024.

42. She held that:

- The District failed to provide S.T. a FAPE during the 2021-2022, 2022-2023 and 2023-2024 school years;

- Winston Prep was an appropriate private placement;

- The District was required to reimburse Parent for S.T.'s tuition at Winston Prep for the 2022-2023 and 2023-2024 school years; and

---

[5] *See, e.g., id.*; *Scott v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 444 (S.D.N.Y. 2014); *K.R. v. N.Y.C. Dep't of Educ.*, 107 F. Supp. 3d 295, 308-09 (S.D.N.Y. 2015); *C.L. v. N. Y. City Dep't of Educ.*, 12 Civ. 1676 (JSR), 2013 U.S. Dist. LEXIS 3474 (S.D.N.Y. Jan. 3, 2013).

- The District was required to conduct comprehensive evaluations in Reading; Occupational Therapy with Sensory Component; Auditory processing; and a Functional Behavior Assessment.

FOFD at 54-55.[6] The FOFD is attached as Exhibit A.

43. On September 9, 2024, the District submitted a Verified Request for Review to the SRO.

44. Parents submitted an Answer and Memorandum of Law on October 4, 2024.

45. On November 6, 2024, SRO Carol H. Hauge issued her decision. The SRO decision is attached as Exhibit B.

46. SRO Hauge reversed the IHO's findings and issued an order vacating all relief granted.

## COUNT I.

### Denial of FAPE; Reversal of Erroneous SRO Decision.

47. "When the decisions of an IHO and an SRO conflict, the Court should generally defer to the SRO's decision as the final decision of the state authorities particularly when the state officer's review has been thorough and careful. But where the district court appropriately concludes that the SRO's determinations are insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges." *Moonsammy v. Banks*, 2024 U.S. Dist. LEXIS

---

[6] IHO Gronbach did deny some of Parent's secondary claims for relief, including her request for reimbursement for a private evaluation, for summer enrichment programs at Winston Prep, and reimbursement for her transportation mileage costs. *Id*. at 54.

10

173688, at *14-15 (S.D.N.Y. Sept. 23, 2024) (quoting *R.E.*, 694 F.3d at 189; *M.H.*, 685 F.3d at 246) (internal quotes omitted).

48. The SRO's decision was not well reasoned.

49. The SRO made incorrect, internally inconsistent findings of fact that contradict the IHO's findings, without adequately explaining her departure from the IHO.

50. The SRO made findings that were not supported by the full, extensive record.

51. The SRO improperly disregarded the IHO's credibility findings.

52. The SRO applied incorrect legal standards.

53. The SRO improperly shifted the burden of proof from the District to Parent, which resulted in her reaching incorrect legal conclusions.

54. Parent and S.T. have been denied a FAPE under the IDEA and the New York Education Code.

55. Wherefore, Parent asks that this Court reverse the SRO's decision, which is not well reasoned, and reinstate the presiding IHO's far more detailed and well-reasoned FOFD.

### COUNT II
### IDEA
*Attorneys' Fees*

56. Parent incorporates by reference each allegation stated above.

57. Parent prevailed in her due process action, as evidenced by the FOFD.

58. The District sought review of the FOFD before the SRO.

59. Parent believes she will prevail in this action for review, in which she requests that this Court reverse the SRO's erroneous decision. Parent will therefore be a "prevailing party" under the IDEA, 20 U.S.C. § 1415(i)(3)(B).

60. A prevailing party is entitled to reasonable attorney's fees. 20 U.S.C. § 1415(i).

61. Wherefore, Parent is entitled to reasonable attorney's fees for her Due Process hearing, SRO proceedings, and this action for administrative review of the SRO's erroneous decision.

62. Parent is further entitled to reasonable fees and costs for additional time expended and costs incurred in seeking attorney's fees in this federal action.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

- Assume jurisdiction of this action.
- Find that the SRO erred when it reversed the IHO's FOFD.
- Vacate the SRO's decision and reinstate the IHO's decision.
- Find that Parent is a prevailing party under the IDEA.
- Award Parent reasonable attorney's fees, costs, and expenses.
- Award Parent pre- and post-judgment interest.
- Award any other relief this Court deems appropriate.

Dated: February 27, 2025
Nassau County, New York

Respectfully Submitted,

/s/ Richard F. Corrao, Esq.
**Law Offices of Susan Deedy & Associates**
Attorneys for Plaintiffs
1600 Stewart Avenue, Suite 609
Westbury, NY 11590
Office: (516) 221-8133
Fax: (516) 221-3011
rcorrao@susandeedylaw.com

Benjamin J. Hinerfeld (BH 2180)
**Law Offices of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360
1528 Walnut Street, Suite 1100
Philadelphia, PA 19102

447 Broadway 2nd Floor
New York, NY 10013
Office (508) 591-0385
Cell (215) 694-7432
Fax (215) 689-2423
Ben@hinerfeldlaw.com

*Co-Counsel for Plaintiffs*